ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 AUG -3 PM 3: 23

CLERK _____
SO. DIST. OF GA.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF GEORGIA

### DUBLIN DIVISION

JESUS MANUEL DELEMOS,           )
                                )
          Plaintiff,            )
                                )
     v.                         )          CV 306-48
                                )
ALBERTO GONZALES et al.,        )
                                )
          Defendants.           )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, an inmate incarcerated at McRae Correctional Facility ("MCF") in McRae,

Georgia, filed a petition for writ of mandamus on June 14, 2006. Because Title 28, United

States Code, Section 1361, which provides for a writ of mandamus, does not create an

independent cause of action, the Court construed the petition as a civil rights complaint

wherein plaintiff seeks mandamus relief. The Court ordered plaintiff to complete a Consent

to Collection of Fees form and Trust Fund Account Statement. Plaintiff complied with the

Order on July 19, 2006. In a separate Order, the Court has found plaintiff financially unable

to pay an initial filing fee. The Court accordingly will proceed with an initial screening of

plaintiff's claim.

Pleadings drafted by pro se litigants must be construed liberally, Haines v. Kerner,

404 U.S. 519, 520-21 (1972) (per curiam), but the Court may dismiss a complaint, or any

part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may

be granted.  28 U.S.C. § 1915A.  For the following reasons, the Court recommends that

plaintiff's complaint be **DISMISSED** and that this civil action be **CLOSED**.


## I. BACKGROUND

According to the complaint, plaintiff is a prisoner at MCF serving a 235-month

sentence for conspiracy to possess with intent to distribute cocaine, a violation of Title 21,

United States Code, Section 846.  Plaintiff began serving his sentence on April 2, 1991, and

he is due to be released on January 15, 2007.

Plaintiff believes that the Immigration and Naturalization Service[1] has placed an

"Oakdale detainer" on him, wherein he will be subject to deportation proceedings at the

federal prison in Oakdale, Louisiana.  Under Federal Bureau of Prisons ("BOP") Program

Statement ("PS") 5111.01, which implements the "Institutional Hearing Program" ("IHP"),

persons subject to deportation proceedings are transferred to the Oakdale facility seven

months prior to the expiration of their sentence.  There, ICE conducts deportation

proceedings while the inmate serves the final months of his sentence in BOP custody, and

the inmate then is either deported or released without serving additional administrative

detention.

Plaintiff also believes that he will not be moved to the Oakdale facility, but that he

will instead be turned over to ICE in Atlanta, Georgia, for deportation proceedings at the

conclusion of his sentence.  There, he estimates that he will spend an additional three to four

---

[1]The Bureau of Immigration and Customs Enforcement ("ICE") is now the
government agency responsible for the deportation of illegal aliens.

months in prison awaiting resolution of deportation proceedings. Plaintiff urges the Court to order his transfer to Oakdale so that his administrative proceedings may be conducted prior to the expiration of his prison sentence.

## II. ANALYSIS

Prisoners generally do not maintain a due process interest in the place of their confinement. McKune v. Lile, 536 U.S. 24, 39 (2002); Meachum v. Fano, 427 U.S. 215, 228-29 (1976). Any expectation that a prisoner may have in remaining in a particular facility or being transferred to a particular facility is "too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." Meachum, 427 U.S. at 228.

A regulation such as PS 5111.01, however, "may create a protected liberty interest if it uses mandatory language to place a substantive limit on official discretion." United States v. Tubwell, 37 F.3d 175, 179 (5th Cir. 1994) (citing Olim v. Wakinekona, 461 U.S. 238, 249 (1983)). Thus, if BOP regulations deprive BOP officials of their discretion in effecting prison transfers for prisoners subject to deportation proceedings, then plaintiff may possess a liberty interest in a transfer to the Oakdale facility.

The BOP instituted the IHP in 1997 "to ensure that all eligible inmates in Bureau custody receive timely deportation hearings." PS 5111.01. "The emphasis is on conducting the hearing at the beginning, or at least well before the end of, an inmate's sentence[,] thus allowing [ICE] to effect deportation immediately upon completion of an inmate's sentence and reduce the number of aliens held as post-sentence detainees." Id. The program

3

statement further clarifies that the "IHP's overall intent is for staff to use professional judgment within specific guidelines. The system is designed to emphasize staff flexibility in decision-making . . . ." Id.

Under PS 5100.7, prisoners subject to deportation "will be redesignated by the time they are seven months from a firm projected release date. Once approved for transfer, institution and transportation staff will immediately schedule the inmate for movement to FCI Oakdale." The program statement recognizes, however, that "some criminal aliens may be inappropriate for transfer to FCI Oakdale," and provides that the Oakdale facility "will notify the [prison wherein the criminal alien is housed] when this occurs and will advise of any additional action necessary to coordinate the resolution of the inmate's citizenship/release status." Id.

In Wottlin v. Fleming, 136 F.3d 1032 (5th Cir. 1998) (per curiam), the Fifth Circuit considered whether another BOP program statement, PS 5330.10, contained "mandatory" language giving rise to a liberty interest in its implementation.[2] PS 5330.10 provides that prisoners completing a substance abuse program are eligible for early release. Id. at 1034. The inmate plaintiff, who completed a substance abuse program, sought to enforce PS

_____

[2] While the Court is unaware of prior decisions addressing whether prisoners may seek mandamus relief based on PS 5111.01, courts have held that analogous provisions of the Immigration and Nationality Act, Title 8, United States Code, Section 1252, do not create private causes of action. Campos v. I.N.S., 62 F.3d 1311, 1314 (9th Cir. 1995); Hernandez v. I.N.S., 50 F.3d 842, 848 (10th Cir. 1995) (finding no cause of action under Act in mandamus action). The court in Campos found that Congress passed the Act–which requires that the Attorney General "begin any deportation proceedings as expeditiously as possible after the date of conviction" where an alien is convicted of a crime making him subject to deportation–for economic, rather than humanitarian, purposes and that inmates accordingly did not fall with the "zone of interests" protected by the Act. Campos, 62 F.3d at 1314.

4

5330.10 against the BOP. Id. The Court, however, observed that while PS 5330.10 does contain mandatory language in its implementation provisions, the program statement does not mandate that all prisoners completing substance abuse programs be granted early release. Id. at 1036. The court accordingly found the program statement not to be mandatory such that it created a cognizable liberty interest in early release. Id.

Like the program statement in Wottlin, PS 5111.01, while containing mandatory provisions concerning its implementation, does not mandate that a class of prisoners will be relocated to the Oakdale facility, therefore depriving BOP administrators of their discretion in the relocation of inmates. Instead, it preserves BOP administrative discretion in assigning prisoners to Oakdale prior to completion of their sentence for deportation proceedings, and it specifically acknowledges that a situation may arise where prison administrators, in their discretion, determine that a transfer would be inappropriate. The Court accordingly finds that PS 5111.01 does not contain language mandating the transfer of prisoners subject to deportation proceedings to the Oakdale facility and that the program statement accordingly does not give rise to a cognizable liberty interest in its enforcement.

The Court also notes that, from the face of plaintiff's pleadings, he likely would not be entitled to relief even if the IHP were mandatory and did create a liberty interest. Plaintiff has been in BOP custody since April 2, 1991. PS 5111.01, which the BOP implemented on April 25, 1997, provides that prisoners already in BOP custody prior to implementation of the program statement will continue to be processed under pre-existing regulations, not under the IHP. Thus, plaintiff would not be eligible for treatment under the IHP even if PS 5111.01

5

provided for mandatory relocation.[3]


## III. CONCLUSION

For the foregoing reasons, the Court finds that plaintiff does not maintain a cognizable liberty interest in the enforcement of PS 5111.01 or in the IHP. The Court accordingly does not find mandamus relief to be appropriate and recommends that plaintiff's complaint be **DISMISSED** for failure to state a claim on which relief may be granted and that this civil action be **CLOSED**.


SO REPORTED and RECOMMENDED this 3rd day of August, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[3]According to the responses to plaintiff's administrative appeals, which are attached to plaintiff's request for mandamus relief, the BOP still plans to transfer plaintiff to Oakdale prior to the expiration of his prison sentence for deportation proceedings.